

ENTERED
12/29/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| TITUS CHINEDU OPARAJI, § | Case No. 10-30968 | |
| Debtor(s). § | | |
| § | Chapter 13 | |
| § | | |
| TITUS CHINEDU OPARAJI, § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 10-03231 | |
| § | | |
| WELLS FARGO BANK, N.A. SUCCESSOR § | | |
| BY MERGER TO WELLS FARGO HOME § | | |
| MORTGAGE, INC., AS SERVICING § | | |
| AGENT FOR DEUTSCHE BANK § | | |
| NATIONAL TRUST, *et al*, § | | |
| Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

Wells Fargo Bank, N.A. ("Wells Fargo") filed proofs of claim in Titus Oparaji's 2004 bankruptcy case and in his current bankruptcy case. The arrearage amounts on the proofs of claim are inconsistent. Oparaji alleges that Wells Fargo is estopped from asserting inconsistent arrearage amounts in his current bankruptcy. Oparaji moved for partial summary judgment on the estoppel arguments. The Court holds that Wells Fargo is judicially estopped from asserting charges that could have been, but were not, included in its earlier proof of claim.

### JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

**BACKGROUND**

Titus Oparaji filed for chapter 13 bankruptcy in 2004 ("First Bankruptcy").[1] In the First Bankruptcy, Wells Fargo filed a secured claim for Oparaji's debt on his home.[2] Wells Fargo amended its proof of claim several times. In May 2005, Wells Fargo filed its second proof of claim.[3] It filed its third proof of claim[4] in October 2005. Wells Fargo filed its fourth proof of claim[5] ("Earlier Proof of Claim") in December 2008. Finally, Wells Fargo filed its fifth proof of claim[6] in July 2009. Oparaji's bankruptcy case was dismissed in November 2009, and he never obtained a discharge.

After the filing of the Earlier Proof of Claim and before the filing of Wells Fargo's fifth proof of claim, the Court approved a modification of Oparaji's chapter 13 plan. This occurred in May, 2009.

Oparaji filed his second bankruptcy ("Current Bankruptcy") on February 1, 2010. Wells Fargo reasserted its secured claim on Oparaji's home in the Current Bankruptcy, filing a proof of claim[7] on March 2, 2010 and an amended proof of claim[8] on March 11, 2010 ("Current Proof of Claim").

The Earlier Proof of Claim asserted $17,373.69 in arrearages. The arrearages include (i) $6,386.84 in pre-petition arrearages on the debt and (ii) $12,960.85 in allowable charges,

---

[1] Case No. 04-42461, filed on September 2, 2004.

[2] The first proof of claim filed in the First Bankruptcy was Claim No. 6-1.

[3] Claim No. 11-1 in the First Bankruptcy.

[4] Claim No. 13-1 in the First Bankruptcy.

[5] Claim No. 13-2 in the First Bankruptcy.

[6] Claim No. 6-2 in the First Bankruptcy.

[7] Claim No. 8-1 in the Current Bankruptcy.

[8] Claim No. 8-2 in the Current Bankruptcy.

including $2,599.81 in post-petition arrearages, $7,399.02 in delinquent 2006 taxes, and a $964.60 escrow shortage. The arrearage total subtracts $2,000.00 held in suspense.

Wells Fargo now claims $86,003.25 in arrearages. The Current Proof of Claim includes $37,906.56 in pre-petition arrearages on the debt, comprised of 24 missed monthly payments from March 1, 2008 through February 1, 2010. It also includes an escrow shortage of $43,940.87 and various other fees and charges.

Many of the charges in the Current Proof of Claim arose after the Earlier Proof of Claim. No estoppel applies to such charges. However, the Current Proof of Claim also asserts arrearages and charges that could have been, but were not, included in the Earlier Proof of Claim. Oparaji argues that Wells Fargo is judicially estopped from claiming arrearages and charges that were not included in the Earlier Proof of Claim. In the alternative, Operaji alleges that Wells Fargo is equitably estopped from asserting the charges. Oparaji also asserts that he does not owe the debt Wells Fargo claims. Finally, Oparaji seeks sanctions against Wells Fargo under Fed. R. Bankr. P. 9011.[9]

Wells Fargo filed a motion for partial summary judgment on October 29, 2010. (Doc. No. 24.) Oparaji filed his own motion for partial summary judgment on November 1, 2010. (Doc. No. 25.) Oparaji responded to Wells Fargo's motion on November 15, 2010. (Doc. No. 28.) Wells Fargo also filed its response to Oparaji's motion on November 15, 2010. (Doc. No. 27.)

Oparaji argues that Wells Fargo is judicially estopped from asserting the higher arrearage amounts. Judicial estoppel applies when a party took a clearly inconsistent position in earlier litigation, the court accepted the position, and the inconsistency was not inadvertent. Oparaji

---

[9] Oparaji also sued Barrett Daffin Frappier Turner & Engel, LLP ("Barrett Daffin"), and Angie Marth, an attorney at Barrett Daffin, for sanctions under Fed. R. Bankr. P. 9011. The Court granted Barrett Daffin's motion for partial summary judgment on the Rule 9011 sanctions on December 16, 2010. (Doc. No. 30.)

argues that all of the requirements are met here.  First, he argues, Wells Fargo's two proofs of claim are clearly inconsistent.  Second, he argues, the Court approved a plan modification in the First Bankruptcy in reliance on Wells Fargo's Earlier Proof of Claim.  Finally, Oparaji argues that Wells Fargo's omission of the additional charges was not inadvertent.  Oparaji also argues that he detrimentally relied on Wells Fargo's Earlier Proof of Claim, and therefore Wells Fargo should be equitably estopped from asserting the additional charges.

Wells Fargo asserts that the Earlier Proof of Claim and the Current Proof of Claim are not clearly inconsistent.  The Current Proof of Claim contains additional charges, but according to Wells Fargo, the claim amounts differ because the Current Bankruptcy was initiated over five years after the First Bankruptcy.  Wells Fargo alleges that in the intervening period, Oparaji missed numerous mortgage payments, and Wells Fargo paid thousands of dollars in property taxes and hazard insurance premiums out of Oparaji's escrow account.  Furthermore, any errors or omissions in the Earlier Proof of Claim, they argue, were inadvertent.  Additionally, Wells Fargo argues, the dismissal of Oparaji's First Bankruptcy means that, as a matter of law, the Earlier Proof of Claim should have no effect.

The Court heard arguments on the motions for summary judgment on November 29, 2010, reserving judgment on the judicial estoppel and equitable estoppel issues.  The Court now grants summary judgment in favor of Oparaji on the judicial estoppel issue.  As announced at the hearing, the Court grants summary judgment in favor of Wells Fargo on the Rule 9011 sanctions issue.

## ANALYSIS

Judicial estoppel is a common-law doctrine that prevents a party from assuming inconsistent positions in litigation.  *MV Stacey D v. Primary P & I Underwriter (In re Superior*

*Crewboats, Inc.)*, 374 F.3d 330, 334 (5th Cir. 2004). In the Fifth Circuit, judicial estoppel applies when (1) the party's position is clearly inconsistent with the previous position; (2) the court accepted the previous position; and (3) the inconsistency was not inadvertent. *See id.* (applying three requirements for judicial estoppel when the debtor failed to schedule a claim).

### Requirements for Applying Judicial Estoppel

Wells Fargo's position in the Current Proof of Claim is clearly inconsistent with the position of the Earlier Proof of Claim, the Court relied on the Earlier Proof of Claim, and Wells Fargo's inconsistency was not inadvertent. Therefore, judicial estoppel applies in this case.

First, the two proofs of claim are clearly inconsistent. The Court analyzes the details of the inconsistency below, but the difference in the claimed arrearage on the debt exemplifies the conflict. In the Earlier Proof of Claim, filed December 23, 2008, Wells Fargo claimed $2,599.81 in post-petition arrearages. That amount should have included all arrearages that had accrued after September 2004, when Oparaji filed the First Bankruptcy, and before December 23, 2008. *See* 11 U.S.C. § 1305. According to Wells Fargo's Current Proof of Claim, it did not. The Current Proof of Claim asserts $37,906.56 in pre-petition arrearages, comprised of 24 missed monthly payments. Ten of these monthly payments were due before December 23, 2008 and could have been claimed as post-petition arrearages in the Earlier Proof of Claim. They were not. Instead, Wells Fargo affirmatively represented that the amount of post-petition arrearages was $2,599.81, an amount that did not include any of the missed payments that are now claimed as pre-petition arrearages.[10]

The amounts cannot be reconciled. Wells Fargo argued at the hearing that the amounts

---

[10] The $2,599.81 in post-petition arrearages is the same amount claimed on Wells Fargo's second proof of claim in the First Bankruptcy, No. 11-1, which was filed on May 31, 2005. The amount therefore does not include any charges incurred after May 31, 2005. All of the pre-petition arrearages on the Current Proof of Claim were allegedly incurred from March 2008 through February 2010.

could be reconciled by noting which charges had been left off. However, this argument is simply a statement of why the proofs of claim are inconsistent. The omission of charges that could have been included is a clear inconsistency between the two proofs of claim.

Second, the Court accepted Wells Fargo's Earlier Proof of Claim when it approved Oparaji's plan modification in May 2009. Oparaji's proposed plan payments in the modification were intended, and believed by the Court, to cure the arrearages on the Wells Fargo mortgage. Relying on the accuracy of the amounts in the Earlier Proof of Claim, the Court approved the modification.[11]

Finally, Wells Fargo's inconsistency was not inadvertent. In cases involving a debtor's failure to schedule claims, courts determine inadvertence by looking at whether the debtor lacked knowledge of the claim or whether the debtor had no motive for concealing the claim. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 386 (5th Cir. 2008). Applying the *Kane* inadvertence test in the proof of claim context, the Court concludes that Wells Fargo's failure to include the charges in the Earlier Proof of Claim was not inadvertent.

Because Wells Fargo has control of the records and is the only party possessing evidence about why the proofs of claim are inconsistent, Wells Fargo bears the burden of proving inadvertence. *Campbell v. U.S.*, 365 U.S. 85, 96 (1961) ("[T]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."); *In re Charles*, 334 B.R. 207, 216 (Bankr. S.D. Tex. 2005).

Neither of the *Kane* factors is present here. First, Wells Fargo did not lack knowledge. Wells Fargo kept the records of payments and charges on Oparaji's account, and it had

---

[11] Because Wells Fargo's last proof of claim in the First Bankruptcy was filed in July 2009, after the plan modification, the Court did not rely on the amounts in the July 2009 proof of claim. Estoppel is therefore based on the position taken in the Earlier Proof of Claim, which was filed December 23, 2008.

knowledge of the amounts that could have been included in the Earlier Proof of Claim. As the court in *Engines Southwest, Inc. v. Kohler Company* noted, "Mistake or inadvertence is an applicable defense to judicial estoppel if the offending party did not have the relevant correct information at its disposal to begin with." 263 F.App'x 411, 413 (5th Cir. 2008). Wells Fargo had all the relevant correct information at its fingertips.

Second, Wells Fargo has not met its burden of proving lack of motive. Wells Fargo's motion for summary judgment asserts a lack of motive, but this assertion is not supported by any evidence. Although Wells Fargo argues that it lost money as a result of the mistake and therefore could not have had a motive for claiming lower amounts on the Earlier Proof of Claim, the Court notes that Wells Fargo could have had a number of motives for the omission. For example, Wells Fargo may have wished to save money by placing unverified amounts in its proof of claim rather than spending the funds to determine the correct amount. Or, Wells Fargo it may have wished to avoid spending legal fees to litigate a dispute over the amounts. Wells Fargo may have intended to facilitate the success of Oparaji's bankruptcy, believing that a successful bankruptcy plan would result in a higher payoff to Wells Fargo. These plausible motives defeat Wells Fargo's inadvertence defense. *See Mims v. Browning Mfg. (In re Coastal Plains)*, 179 F.3d 197, 211 (5th Cir. 1999) (disallowing inadvertence defense where court could identify plausible motives for concealment of claims, including preventing unsecured creditors from opposing lifting stay or keeping creditors from bidding more at the foreclosure auction for debtor's assets).

Wells Fargo's motive need not have arisen from blatant bad faith. *See Engines Sw.*, 263 F.App'x at 414 (upholding district court's ruling that inadvertence defense did not apply when debtor did not display "blatant legal bad faith," but "muddied" discovery issues and delayed

notifying district court of desire to substitute plaintiffs); *Okan's Foods, Inc. v. Windsor Assocs. Ltd. P'ship (In re Okan's Foods, Inc.)*, 217 B.R. 739, 755-56 (Bankr. E.D. Pa. 1998) (finding that the Third Circuit's "bad faith" requirement was satisfied where the debtor's filings, particularly the proposed distribution in the debtor's plan, were so obviously inconsistent with the existence of the debtor's claim as to evince "a reckless disregard for the truth").

There is no evidence of lack of motive, and it is simply not true, as Wells Fargo asserts, that it could not have had a motive to misstate the claim amounts. Wells Fargo has not met its burden of establishing inadvertence. Judicial estoppel therefore applies as to any charges that had accrued as of December 23, 2008 but were not included on the Earlier Proof of Claim.

### Effect of Prior Dismissal

Wells Fargo argues that, as a matter of law, judicial estoppel should not apply to any representations made in the First Bankruptcy. Because Oparaji's First Bankruptcy was dismissed, the chapter 13 plan from the First Bankruptcy no longer has any effect on the parties. Furthermore, under § 349 of the Bankruptcy Code, after dismissal, the parties should be returned to the position they were in as of the petition date. Wells Fargo argues that, accordingly, it should not be bound by the position it took in the First Bankruptcy.

Section 349 returns the parties, after the dismissal of a bankruptcy, to the position they were in at the time of filing with respect to their property rights. It does not erase all history. Parties may still face consequences as a result of the earlier bankruptcy. In *United States v. Standard Bank*, the court found nothing in § 349 that prevented the application of *res judicata* to the resolution of a lien priority dispute in a confirmed plan, even after the bankruptcy case was dismissed. 91 B.R. 874, 878-879 (W.D. Mo. 1988). Similarly, nothing in § 349 prevents the invocation of judicial estoppel with respect to positions taken in a dismissed bankruptcy.

8 / 13

The Ninth Circuit held that judicial estoppel applies to a debtor's failure to schedule a claim in a bankruptcy case that was later dismissed. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001). In *Hamilton*, the debtor had actually obtained a discharge, but the discharge was vacated when the bankruptcy was dismissed. *Id.* A discharge is not, however, necessary to establish judicial acceptance of the earlier position. "Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied. The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways." *Id.* The Court's reliance on the Earlier Proof of Claim in approving the plan modification, as discussed above, constitutes acceptance.

Moreover, the protection of judicial integrity supports the application of judicial estoppel even when the proceeding is ultimately dismissed. The dismissal of Oparaji's First Bankruptcy and his failure to attain a discharge therefore do not preclude the application of judicial estoppel.

### Effect of Voluntary Amendment

Wells Fargo also argues that because it was not required to file an amendment to the proof of claim, it should not be bound by any inaccuracies in the Earlier Proof of Claim. The Court disagrees. Even when an amended proof of claim is not required, a creditor who chooses to file one is obligated to file an accurate amendment. The integrity of the bankruptcy claims process is no less harmed by a voluntary inaccurate filing than by a mandatory one. The Court cannot be expected to rely less on the accuracy of voluntary filings. Judicial estoppel therefore applies to the position taken in the Earlier Proof of Claim.

**Allowed Claim**

Wells Fargo may not claim amounts that had accrued as of December 23, 2008, when the Earlier Proof of Claim was filed. As analyzed below, Wells Fargo may claim $38,798.16 plus any NSF fees, uncollected late charges, and property preservation charges that have been incurred since December 23, 2008.

a. *Arrearage on Debt*

The Current Proof of Claim lists pre-petition arrearages for 24 monthly payments. Ten of the payments were due before Wells Fargo filed the Earlier Proof of Claim. Wells Fargo may claim pre-petition arrearages for only 14 months—January 2009 through February 2010. It is estopped from claiming arrearages for March 2008 through December 2008. Wells Fargo may claim $22,112.16 for pre-petition arrearages.

b. *Attorney Fees*

Wells Fargo claims $1,200.69 for pre-petition attorney fees, and $250.00 for post-petition attorney fees. The attached invoices show that fees totaling $478.31 were incurred in 2006. Wells Fargo is estopped from claiming this amount. According to the attached invoices, fees totaling $283.51 were incurred after December 23, 2008 and before February 1, 2010. Fees totaling $550.00 were incurred after February 1, 2010. Wells Fargo may claim $283.51 in pre-petition attorney fees and $250.00 in post-petition attorney fees.[12]

c. *Escrow Shortage*

The Current Proof of Claim also includes an escrow shortage of $43,940.87. The Earlier Proof of Claim included a $964.60 escrow shortage. The Earlier Proof of Claim also listed $7,399.02 in delinquent taxes for 2006. Wells Fargo stated at the hearing that delinquent taxes were paid from Oparaji's escrow account, so this charge should have been included as part of the

---

[12] Of course, the post-petition fees must be separately approved pursuant to Fed. R. Bankr. P. 2016.

escrow shortage. This change in labeling does not constitute a clear inconsistency between the Earlier Proof of the Claim and the Current Proof of Claim. Wells Fargo may claim both the $7,399.02 and the $964.60.

However, Wells Fargo's own records, attached as Exhibit 3 to its motion for summary judgment, show an escrow shortage of $36,372.76 at the time the Earlier Proof of Claim was filed. (Doc. No. 24-3, at 10.) The $43,940.87 shortage they now claim incorporates the actual $36,372.76 shortage that existed in December 2008. Because the Earlier Proof of Claim included only $8,363.62 (the claimed escrow shortage plus the delinquent taxes) and should have included $36,372.76, Wells Fargo is now estopped from claiming the additional $28,009.14.

The Court allows Wells Fargo to claim the $8,363.62 asserted on the Earlier Proof of Claim in addition to the $7,568.11 increase in the escrow shortage since December 2008, for a total escrow shortage claim of $15,931.73.[13]

   d. *Broker's Price Opinion*

The invoices attached to the Current Proof of Claim show that all but one of the broker's price opinion charges were incurred before December 2008. The Earlier Proof of Claim included $125.00 for broker's price opinion charges. The attached invoices show that this amount is included in the $495.00 charge for broker's price opinions on the Current Proof of Claim. Wells Fargo may claim only the earlier charge of $125.00 plus the $95.00 charge that was incurred after December 2008, for a total broker's price opinion claim of $220.00.

   e. *NSF Fees*

The record does not contain sufficient information for the Court to determine whether any NSF fees were incurred after December 2008, and, if so, the amount of the charges. The

---

[13] The $15,931.73 amount could also be derived by subtracting the estopped $28,009.14 from the claimed $43,940.87.

parties must file a stipulation regarding the correct amount of NSF fees by January 7, 2011.

    *f.  Uncollected Late Charges*

The record does not contain sufficient information for the Court to determine whether any uncollected late charges were incurred after December 2008, and, if so, the amount of the charges.  The parties must file a stipulation regarding the correct amount of uncollected late charges by January 7, 2011.

    *g.  Property Preservation*

The record does not contain sufficient information for the Court to determine whether any property preservation charges were incurred after December 2008, and, if so, the amount of the charges.  The parties must file a stipulation regarding the correct amount of property preservation charges by January 7, 2011.

## Equitable Estoppel

Because the Court holds that judicial estoppel bars Wells Fargo from asserting claims that accrued before December 23, 2008 but were not included on the Earlier Proof of Claim, the equitable estoppel issue is moot.  The Court therefore denies summary judgment on the equitable estoppel issue.

## Sanctions

The Court has already granted summary judgment in favor of Barrett Daffin on Oparaji's claim for Rule 9011 sanctions.  As announced at the hearing, the Court also grants summary judgment in favor of Wells Fargo on this issue.  Rule 9011's safe harbor provision does not allow a motion for sanctions when the party against whom sanctions are sought does not have an opportunity to withdraw or correct the challenged paper, claim, defense, contention, allegation, or denial.  *See* Fed. R. Bankr. Pr. 9011(c)(1)(A).  Operaji did not send a safe harbor letter to

Wells Fargo and may not now claim sanctions. *The Cadle Co. v. Pratt (In re Pratt)*, 524 F.3d 580, 588 (5th Cir. 2008) ("[T]he plain language of Rule 9011 mandates that the movant serve the respondent with a copy of the *motion* before filing it with the court.").

### CONCLUSION

The Court grants summary judgment in favor of Oparaji on the judicial estoppel issue. Wells Fargo is judicially estopped from claiming any arrearages, charges, or fees that accrued before the Earlier Proof of Claim was filed, unless such amounts were included in the Earlier Proof of Claim. The Current Proof of Claim asserts $86.003.25 in arrearages. Of this amount, Wells Fargo may claim $38,797.40 plus any NSF fees, uncollected late charges, and property preservation charges that have been incurred since December 23, 2008. The Court denies as moot the cross-motions for summary judgment on the equitable estoppel issue, and the Court grants summary judgment in favor of Wells Fargo on the sanctions issue.

SIGNED **December 28, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE